IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-0668-GPG

**BROOKS TERRELL-BEY**,

    Plaintiff,

v.

**K. CRANK**, Trust Fund Accountant; and
**GOMEZ**, Unit Manager,

    Defendants.

---

## ORDER DISMISSING CASE

---

Plaintiff, Brooks Terrell-Bey, is a federal inmate currently incarcerated at the United States Penitentiary, Administrative Maximum ("ADX") in Florence, Colorado. Acting *pro se*, he initiated this action by filing a Prisoner Complaint pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against two ADX employees challenging the conditions of his confinement.

### A. Mandatory Review Provisions and Standards of Review

In the Prison Litigation Reform Act (PLRA), Pub.L. No. 104–134, 110 Stat. 1321 (1996), Congress adopted major changes affecting federal actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. Pertinent to the case at bar is the authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims.

Specifically, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed *in forma pauperis* (IFP), *i.e.*,

without prepayment of costs.  Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

In addition, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint.  28 U.S.C. § 1915A(b).

Further, the PLRA substantially amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e.  In this regard, the PLRA amended section 1997e(c) to require the court "on its own motion or on the motion of a party" to dismiss any action brought by a prisoner with respect to prison conditions under 42 U.S.C. § 1983 if the action is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."  *See* 42 U.S.C. § 1997e(c)(1).[1]

Plaintiff is considered a "prisoner" as that term is defined under the PLRA, *see* 28 U.S.C. §§ 1915(h); 1915A(c), and he has been granted leave to proceed IFP in this action (ECF No. 7).  Moreover, his Complaint concerns prison conditions and Defendants are employees of a governmental entity.  Thus, his Complaint must be reviewed under the authority set forth above.

In reviewing complaints under these statutory provisions, a viable complaint must include

---

[1] When reviewing a complaint for failure to state a claim, the Court may also consider documents attached to the complaint as exhibits.  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.")).

2

"enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007) (rejecting the traditional standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).  The question to be resolved is:  whether, taking the factual allegations of the complaint, which are not contradicted by the exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations ... enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]"  *Bell Atlantic Corp.*, 550 U.S. at 555.  Moreover, a legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim.  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).  *See Conkleton v. Raemisch*, Civil No. No. 14–1271, ___ Fed. App'x ___, 2015 WL 794901 (10th Cir. Feb. 26, 2015) (upholding in part District Court's dismissal as frivolous of prisoner civil rights complaint); *Ross v. Romero*, 191 Fed. App'x 682 (10th Cir. 2006) (affirming district court's *sua sponte* dismissal of prisoner's civil rights complaint under 28 U.S.C. § 1915(b).

The Court must construe the Complaint liberally because Plaintiff is a *pro se* litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  If a complaint reasonably can be read "to state a valid claim on which the plaintiff could prevail, [a court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Hall*, 935 F.2d at 1110.  However, a court should not act as a *pro se* litigant's advocate.  *See id.  Sua sponte* dismissal is proper when it is patently obvious that plaintiff could not prevail on the facts alleged.  *Andrews v. Heaton,* 483 F.3d 1070, 1074 (10th Cir. 2007); *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (internal quotations omitted); *McKinney*

*v. State of Okla., Dept. of Human Servs., Shawnee, OK*, 925 F.2d 363, 365 (10th Cir. 1991); *Huxall v. First State Bank*, 842 F.2d 249, 249 n. 2 (10th Cir. 1988).

### B. Plaintiff's Claims

Plaintiff makes two claims in this action. First, he complains that prison authorities have prevented him from opening an individual savings account in an outside financial institution. Second, he complains that prison authorities have misappropriated his funds by taking twenty (20) percent of his monthly income for each of his five different civil actions for which he is required to pay fees under 28 U.S.C. § 19195(b). Plaintiff asserts that these actions have violated his rights as protected by the Due Process Clause. For the reasons stated below, the Complaint and the action will be dismissed pursuant to the screening authority set forth above. The pertinent grounds which will result in the dismissal of all claims against all Defendants are addressed below.

### C. Liability under *Bivens*

Plaintiff seeks to assert liability against Defendants pursuant to the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001). Specifically, the Court "held that a victim of a Fourth Amendment violation by federal officers may bring suit against the officers in federal court." *Id*. A *Bivens* action permits damage suits against federal employees mirroring those filed against state actors pursuant to 42 U.S.C. § 1983.

At a minimum, in order to state a *Bivens* claim, a plaintiff must show that the defendants: (1) acted under color of federal law; and (2) caused the plaintiff to be deprived of a right secured by the constitution or laws of the United States. *See, e.g.*, *Brady v. Robinson*, 77 F.3d 488 (9th Cir.

1996). Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, violated the individual's rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009). In addressing such claims, analysis begins by identifying the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 393–394 (1989) (internal quotations and citations omitted). The validity of the claim then must be judged by reference to the specific constitutional standard which governs that right. *Id*.

### D. Due Process Claim

In the case at bar, Plaintiff claims that Defendants violated his rights as protected by the Due Process Clause, which was promulgated to secure the individual from the arbitrary exercise of the powers of government. "The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000). "A person alleging that he has been deprived of his right to procedural due process must prove two elements: that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and that he was not afforded an appropriate level of process." *Zwygart v. Bd. of Cnty. Comm'rs*, 483 F.3d 1086, 1093 (10th Cir. 2007) (internal quotations omitted); *see Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (setting forth elements of procedural due process violation). The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions; the "substantive" aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression. *Daniels v. Williams*, 474 U.S. 327, 329-33 (1986) (citations omitted.).

The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests." *Hewitt v. Helms*, 459 U.S. 460 (1983); *Morrissey v. Brewer*, 408 U.S. 471 (1972). The types of protected liberty interests are not unlimited. The interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's claims is whether Defendants' actions impacted a constitutionally-protected interest. "[L]awfully incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt v. Helms*, 459 U.S. 460, 467 (1983). A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. *Hewitt*, 459 U.S. at 466. A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, *Morrissey*, 408 U.S. at 471, and the revocation of probation, *Gagnon*, 411 U.S. at 778. The Due Process Clause, however, does not create an inherent liberty interest to remain free from restrictive conditions of confinement. *See, e.g., Hewitt*, 459 U.S. at 468; *Wolff*, 418 U.S. at 556; *Meachum v. Fano*, 427 U.S. 215 (1976); *Montanye v. Haymes*, 427 U.S. 236 (1976).

Twenty years ago, in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court

pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483 (emphasis added). *See also Wilkinson v. Austin*, 545 U.S. 209 (2005). Relevant factors to consider when determining whether conditions of confinement implicate a protected liberty interest include: 1) whether the conditions relate to and further a legitimate penological interest, such as safety or rehabilitation; 2) whether the conditions of placement are extreme; 3) whether the placement increases the duration of confinement; and 4) whether the placement is indeterminate. *Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th Cir. 2012). Further, "any assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007) (citation omitted).

With respect to his first claim, Plaintiff alleges that Defendants are denying him access to open an individualized savings account at a private outside financial institution presumably because BOP forbids prisoners to utilize outside financial institutions. Prohibiting prisoners from utilizing outside banking facilities relates to and furthers the legitimate penological interest of promoting institutional security. In addition, such a prohibition is not extreme as federal prisoners are allowed to maintain inmate accounts for the maintenance of their moneys. Third, such a prohibition does not increase the duration of an inmate's sentence. Consequently, the Court finds that Plaintiff does not have a constitutionally protected interest in his being allowed to open and maintain an account with an outside financial institution. As noted in *Sandin*, there are extensive policy reasons for the Courts to allow prison administrators wide discretion in the management of federal prisons. *See*

*Sandin*, 515 U.S. at 482–83; *Overton*, 539 U.S. at 132; *Meachum v. Fano*, 427 U.S. 215 (1976); *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) ("We ... abhor any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems."). Given the policy concerns discouraging an assumption that a federal prison practice or regulation has created a due process interest or that said interest has been violated without a showing of atypical and significant hardship, combined with Plaintiff's failure to identify a due process interest at stake here, the Court finds that Plaintiff has failed state a claim for which relief can be granted for a procedural due process violation with respect to his first claim.

Further, Plaintiff fails to state a claim for a violation of his substantive due process rights. The constitutional right to "substantive due process" protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them. The Supreme Court has declined to set forth a precise rule outlining the contours of "arbitrary" conduct. Notwithstanding, in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the court instructed that the substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that "shocks the conscience." In so holding, the court reiterated its long standing jurisprudence that only the most egregious official conduct can be said to be "arbitrary" in the constitutional sense. *Id*. at 848-850. The court further instructed that courts should employ a variable range of culpability standards, dependant upon on the circumstances of the case, in determining whether certain actions rise to a constitutionally "shocking" level. *Id. See also Collins v. Harker Heights*, 503 U.S. 115, 126 (1992) (the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression).

Liberally construed and taken as true, Plaintiff does not state a violation of his substantive due process rights with respect to prison authorities refusing to allow him to open an account at an outside financial institution.

### E.  Fee Deductions from Plaintiff's Inmate Account

Plaintiff's second claim is an attack on the way prison authorities are interpreting and implementing the filing fee requirements applicable to prisoners, which are set forth in 28 U.S.C. § 1915(b).  Under 28 U.S.C. § 1915(b), a prisoner proceeding *in forma pauperis* in a civil action or appeal must pay the full filing fee, but is allowed to do so in installments, beginning with an initial partial payment upon filing, section 1915(b)(1), followed by monthly installments fixed at "20 percent of the preceding month's income credited to the prisoner's account ... each time the amount in the account exceeds $10 until the filing fees are paid," section 1915(b)(2).  The thrust of Plaintiff's claim is that he wants the twenty percent deduction made for only one case at a time, freeing up the remainder of his account for other expenditures while his fee obligation for the remainder of his cases are suspended.  In other words, he requests an order that the filing fees for his actions be collected sequentially rather than cumulatively.

The courts of appeals are divided concerning the manner in which the PLRA calls for collection of installment payments from prisoners who simultaneously owe filing fees in multiple cases.  The Second, Third and Fourth Circuits interpret § 1915(b) to cap the monthly exaction of fees at twenty percent of a prisoner's monthly income, regardless of the number of cases for which he owes filing fees.  *See Siluk v. Merlin*, ___ F.3d ___, Civil No.11–3996, 2015 WL 1600236, (3d Cir. Apr. 21, 2015); *Torres v. O'Quinn*, 612 F.3d 237, 252 (4th Cir. 2010); *Whitfield v. Scully*, 241 F.3d 264, 277 (2d Cir. 2001).  However, the Fifth, Seventh, Eighth, Tenth, and District of Columbia Circuits have held that § 1915(b)(2) requires an indigent prisoner to simultaneously pay 20 percent

9

of his monthly income toward each outstanding filing fee, even if this results in 100 percent of a prisoner's monthly income being collected. *Atchison v. Collins*, 288 F.3d 177, 180–81 (5th Cir. 2002); *Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997), *overruled in part on other grounds by Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000); *Lefkowitz v. Citi–Equity Grp., Inc.*, 146 F.3d 609, 612 (8th Cir. 1998); *Christensen v. Big Horn Cnty. Bd. of Cnty. Comm'rs*, 374 F. App'x 821, 833 (10th Cir. 2010) (unpublished); *Pinson v. Samuels*, 761 F.3d 1, 8 (D.C. Cir. 2014), *petition for cert. filed sub nom. Bruce v. Samuels*, 83 U.S.L.W. 3640 (U.S. Jan. 16, 2015) (No. 14–844). Although the Ninth Circuit has not addressed this issue, District Courts within that Circuit also have required indigent prisoners simultaneously to pay toward multiple filing fees. *Pinson v. BOP*, Civil No. 1:13–cv–1821, 2015 WL 756501 (E.D. Cal. Feb. 23, 2015); Federal *Hendon v. Ramsey*, 478 F.Supp.2d 1214, 1219 (S.D. Cal. 2007); *Samonte v. Frank*, 517 F.Supp.2d 1238, 1243 (D. Haw. 2007).

This Colorado District Court is required to follow the interpretation of federal law as decided by the Court of Appeals for the Tenth Circuit. *McDaniels v. McKinna*, 96 F. App'x 575, 578 (10th Cir. 2004) ("Our precedents govern the application and interpretation of federal law in cases where the alleged constitutional violation occurred within this circuit."). Under Tenth Circuit case law, a prisoner is required simultaneously to make payments towards satisfaction of all of his existing obligations. *Christensen*, 374 F. App'x at 833. *Accord Georgacarakos v. Wiley,* Civil Action No. 07–01712, 2011 WL 940803 (D. Colo. Mar. 16, 2011). Accordingly, the Court will dismiss Plaintiff's second claim as well.

### F. Conclusion

The federal courts are not overseers of the day-to-day management of prisons. Prison officials require broad discretionary authority as the "operation of a correctional institution is at best

an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Accordingly, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Beard v. Banks*, 548 U.S. 521 (2006); *Bell v. Wolfish*, 441 U.S. 520, 527 (1979).

Accepting the facts in the complaint as true, but not the conclusory statements, the Court concludes that Plaintiff has not alleged sufficient facts to state a plausible federal law or constitutional violation against any named Defendant. Moreover, allowing Plaintiff to amend his complaint would be futile. Consequently, this action will be dismissed. Accordingly, it is

**ORDERED** that the Complaint and this action are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A and/or 42 U.S.C.A. § 1997e. It is

**FURTHER ORDERED** that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Plaintiff files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED at Denver, Colorado, this   4th   day of   May        , 2015

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court